Our next case is United States v. Williams Bay. The button on the right will raise the podium if that would be more comfortable for you, counsel. Wow. Please. Good morning. May it please the court, I'm Theodore Koch. I represent Mr. Williams Bay. The essential crux of our argument here today is that when a factual dispute exists going into a criminal sentencing hearing and the government declines a FATICO hearing and I'm sorry, you dropped your voice and I didn't hear the words that preceded FATICO hearing. The government declines to pursue a FATICO hearing. It wasn't only the government that declined. The defense declined. Correct. When the government and the defense decline, then what's the conclusion? Then when the government wants to rely on evidence that exists outside the central focused documents in the case, there should be some notice to the defendant that the government is going to rely on.  Yes, Your Honor. It was certainly in the pre-sentence report. There's a distinction between what was in the pre-sentence report and what the government relied on. In the pre-sentence report, there was a paragraph or two that stated that Mr. Williams Bay had picked up crack from Mr. Scott on a number of occasions and on one particular occasion bought a brick of cocaine, a kilogram. And the source of this was an FBI report that described an agent's conversations with Mr. Howe. Right, so the pre-sentence report made it absolutely clear that it was placed before the judge that Mr. Howe had said your client had bought a brick of cocaine and the plea agreement expressly left it open to the government to argue quantity. So how is it that you were blindsided? Well, there's a difference. See, when you're not having a factual hearing, you're having basically an argument over the law. Well, I'm sorry, the law is well established, isn't it? Correct me if I'm wrong, that in sentencing a judge can rely on hearsay and all sorts of things. Isn't that right? Yes, Your Honor. Whatever information is to the judge's hand. Correct. So the pre-sentence report told you that he had said it in an FBI report and then the government said, and by the way, Judge, you heard this informant testify in another trial. Now, you did not say we want to hear him, we want anything. I mean, what's the complaint here? We were on a bit of a slippery slope in this particular sentencing hearing. I recognize that a judge can listen to hearsay, a judge can listen to the testimony in other trials. That's the law, and we're not challenging that as the law. I'm saying that within the particular facts of this case, there is a gray area that is somewhat undefined and that we're asking this court to make a demarcation within that gray area. And that is that the history of this case was that Mr. Williams Bay, he was indicted in 2014. There was jury selection a year later. He participated in jury selection, and then he pled guilty the day after the jury was selected. He pled guilty. There was a PSR ordered and written. His lawyer filed a memorandum, the government filed a memorandum, and they were standing there ready to be sentenced when Judge Meyer, in his canvas of Mr. Williams Bay, became dissatisfied with the quality of representation that he had gotten up to that point. And then I was appointed to represent him. I don't know how else to refer to myself, but as I. I stepped in to represent Mr. Williams Bay at that point in the proceedings, and now everything was at that point already quite focused. And the point of me coming in was to lodge objections to the PSR about this factual issue. That wasn't the only point of your coming in. It was to represent him from that point forward, including at sentencing, right? Yes. And was there anything that obstructed you from asking for a FATICO hearing, if you thought that was appropriate? No. I mean, the order in which it happened was the court issued an e-mail saying, do counsel want a FATICO hearing? The government replied first. The government does not require a FATICO hearing. And then I replied, I don't have one either. And at that point you had at least the PSR that told you that the government said this fellow had said to the FBI he sold me a brick of, or there was a transaction for a brick of cocaine? Correct. So how are you harmed by the fact that the judge not only had that, but had heard the fellow testify at another trial? How are you harmed by that? Well, I have yet to figure out how to cross-examine a transcript. How are you going to cross-examine an FBI report? You can't do that either, and that's why we were going to ---- You didn't ask for a FATICO hearing and said, look, I want to see the guy. I want to question him. Let me ask you this. Why is any of this relevant? As I understand it, your client had a plea agreement. And under that agreement, the district court agreed to substitute a one-to-one crack-to-powder cocaine ratio for the guidelines 18-to-one ratio. And the agreement said that if the judge did that, the base offense level would be 24, which is at least 500 grams but less than 2 kilograms of cocaine. It seems to me that once the judge accepted everything, the plea agreement, not the informant or the cooperator's testimony, was what was dictating everything. And that seems to find some confirmation in the fact that the judge asked you whether his acceptance of what he called the Kimbra variance mooted any drug quantity disagreement, and you responded that it did. So, I mean, it seems to me that drug quantity calculated by reference to the cooperator was really not what informed this sentence. Am I missing something? No, that's perfectly ---- So it was sentenced consistent with the agreement. What is the error? Well, the error is that a district court judge always has to make a valid guidelines calculation before going on to do any variance or downward or upward departure. And the error was in the guidelines calculation based on the finding of the brick of cocaine. We've identified that in cases where the district court takes that guideline as its starting point and then departs from it. But this seems to be quite a different creature. The district court used the cocaine powder ratio, and the parties agreed that if that was the case, there would be a drug quantity or the base offense level would be based on a drug quantity of 500 to 2,000 grams. So by contrast to our other cases, the original guideline didn't inform this sentence at all. Or am I wrong? I mean, tell me how the original guideline calculation somehow affected what the court did here. All I can say, Your Honor, is that in order to do the one-to-one variance under Kimbrough crack to powder, first you have to figure out what the powder guidelines range is. I agree with that. And if you hadn't agreed to the quantity in the agreement, I would see where you had an argument, but you agreed to that. That was the agreement that was made. Okay. All right, let's hear from your adversary. Thank you. Good morning, Your Honor. John Durham for the United States, and I represented the government in the matter below. Your Honor's question is exactly right. In the very first instance, the issue as to quantity in this matter is academic. Judge Meyer established that on the record. So it really had no impact on the sentence whether the court adopted the government's view and the pre-sentence report's view of the quantity or the defendant's. What I think is pertinent here as to some of the practicalities here, Mr. Williams Bay was not the first of the 24 convicted defendants in this case to be sentenced. In fact, he fell toward the end of the list of 24 defendants. With respect to every other defendant who was sentenced by Judge Meyer, Judge Meyer used the Kimbrough departure. That is, he was applying a one-to-one ratio between crack cocaine and powdered cocaine in every case. So as the parties entered into the sentencing in this matter, it was known, the government certainly knew, that the court wasn't going to vary, there wasn't anything in Mr. Williams Bay's case that was different, so the court for some reason would apply a different sentencing structure. Everybody was virtually certain that it would be the application of a one-to-one ratio, and therefore the part of the plea agreement in which the parties agreed that the base offense level would be 24 minus 2 points for acceptance to get to the 22. Everybody knew that was the likely result and that's exactly what happened. As a consequence, from the government's perspective, there's no reason for the court to even reach the issue that's being raised by the defendant here as to the testimony that was considered by Judge Meyer as to quantity. But with respect to that issue, the record is very clear here. The defendant had the FD302, the FBI report, which was provided to him before he pleaded guilty, and in the context of this case, as the court will note from the record, Mr. Williams Bay went all the way through jury selection. He only pleaded guilty after we had disclosed the name of the cooperating witness and what that cooperating witness had to say about him and the other co-conspirators in this case. Over 3,500 material? Yes, Your Honor. We had sought a protective order from the court, which was granted, so that we could protect the names of civilian witnesses essentially up to a point in time shortly before trial. That didn't apply to this cooperator. And as this cooperator, his identity was protected as well. He was a co-defendant, and he didn't plead guilty until May 1st of the year. So we had, in accordance with the court's order, we disclosed his identity. We disclosed his information before jury selection. Williams Bay still elected to go forward, and then the day after the jury had been seated, but before the evidence started, he elected to plead guilty. So they had actual notice of Mr. Howe's cooperation. They had actual notice of the information he provided, and in context, it was that information which precipitated Williams Bay deciding to plead guilty. They had the pre-sentence report, as Judge Kaplan referred to, paragraph 17, that lays out the information as well. They had the government's initial sentencing memorandum, which was not mentioned by counsel, but in the government's original sentencing memorandum, then there was a supplemental filing. We had relied on the quantity and where it came from. So the defendant had all of that information prior to the time that Judge Meyer imposed sentence in this case. And the record is further clear because counsel filed a Rule 35 motion after the sentencing, where he raised an issue among other issues. One had to do with Howe. And Judge Meyer wrote in the record that irrespective of whether he was right or wrong about his finding on quantity, he would have imposed the same sentence, which is exactly the issue that, Your Honor, recall was decided in United States v. Mandela in this circuit, that that would be harmless in any event. And what the Supreme Court suggested, not suggested, said in Molina-Martinez v. United States, that if the record adequately reflects the fact that the court would have imposed the same sentence on proper grounds, then there's no need to send the matter back. Respectfully, that's where this case is. Unless the Court has additional questions, we would rest on that. Thank you. Thank you, Your Honor. Archie, you do have some time for rebuttal. Thank you, Your Honor. I just want to delineate one thing, and that is that at a sentencing where facts are contested, the government has the burden of proof. Going into any sentencing, the defense has to have a sound strategy. The case of Broxmire is in my brief, and this Court writes about how a defendant might be exposed to negative consequences if he were to challenge evidence a certain way and may strategically not pursue certain things. And it was for this reason that once we knew that the government was not going to be calling Mr. Howe, we didn't ask for Mr. Howe to be brought in. Because Mr. Williams Bay was exposed to who knows what Mr. Howe would really say. It's not strategic for the defense to ask the government to produce a witness that has already testified against the defense effectively. However, if the government does choose to bring in a witness like this, then you do have impeachment evidence that you can use against the person. You can cross-examine the person. And so in a case like this, where it's a very awkward procedural situation, at least for the defense, to rely on the fact that the government is choosing not to exercise its burden of proof is... But the government made no such choice. The government produced to probation, and they reported in the pre-sentence report what Howe had said. And given the fact that you began by saying you're not challenging the judge's right to rely on hearsay, the government carried its burden of going forward, and the judge believed it. Yes, Your Honor. Thank you. Thank you very much. We'll take the case under advisement and try to get you a decision soon.